IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CHRISTINE BORDEAUX,<br><br>Plaintiff,<br><br>v.<br><br>CHERYL BICKNASE, in her individual capacity; JEANIE GOLLIDAY, in her individual capacity; DENISE DAVIDSON, in her individual capacity; ANGELA FOLTS-OBERLE, in her individual capacity; and DOES 1-9, in their official and individual capacities;<br><br>Defendants. | 4:18CV3122<br><br><br>**MEMORANDUM<br>AND ORDER** |

On September 24, 2016, Christine Bordeaux ("Bordeaux") was assaulted at the Nebraska Correctional Center for Women ("NCCW") by her cellmate and second cousin, Erica Jenkins ("Jenkins"). She seeks damages under 42 U.S.C. § 1983 against Cheryl Bicknase ("Bicknase"), Jeanie Golliday ("Golliday"), Angela Folts-Oberle ("Folts-Oberle"), and Denise Davidson ("Davidson" and collectively, "the defendants") for allegedly violating her rights under the Eighth Amendment to the United States Constitution by failing to protect her from the assault and being deliberately indifferent about her safety. *See Farmer v. Brennan*, 511 U.S. 825, 831 (1994) (explaining that prison officials violate the Eighth Amendment when they fail to protect inmates because of their deliberate indifference). She also claims the defendants followed unconstitutional policies and customs and were improperly trained to protect her rights.

Now before the Court is a Joint Motion for Summary Judgment filed by Golliday, Folts-Oberle, and Davidson (Filing No. 138) and a separate Motion for Summary Judgment filed by Bicknase (Filing No. 142). For the reasons explained below, the defendants' motions are granted.

## I.      BACKGROUND

### A.      Facts[1]

In August 2013, Bordeaux and Jenkins lured two men into a park in Omaha, Nebraska, and attempted to rob them.   Jenkins's brother, Nikko Jenkins ("Nikko"), murdered both men.   Shortly thereafter, Bordeaux was involved with a carjacking where she witnessed Nikko murder again.   All three were eventually arrested.

Nikko was charged with three counts of murder.   He pleaded no contest and was sentenced to death.   Jenkins went to trial and was found guilty of one count of first-degree murder, two counts of aggravated assault, and one count of using a firearm to commit a felony.   Bordeaux testified against Jenkins at trail.

Bordeaux pleaded guilty to attempted robbery and criminal conspiracy.   She received a prison sentence of twenty years.   Bordeaux and Jenkins were sent to NCCW to serve their time.

The defendants are NCCW staff members.   Davidson was the warden for NCCW.   Part of her job was to disseminate important information to her employees.   One of her employees was Steve Hunzeker ("Hunzeker").   He was a unit administrator for NCCW when Bordeaux arrived.   He supervised inmate classifications and housing.   Folts-Oberle took over Hunzeker's position a few months later when he left NCCW.   Golliday was a unit manager and completed new inmate assessments for both Bordeaux and Jenkins. Bicknase was the case manager for the building where Bordeaux and Jenkins lived and

---

[1]As discussed below, Bordeaux's Brief Opposing Defendants' Motions for Summary Judgment (Filing No. 158) failed to controvert the defendants' properly referenced material facts pursuant to Nebraska Civil Rule 56.1(b)(1).   The facts in each of the defendants' briefs are thus taken as admitted for the purposes of these motions.   *Id.*; *see Tramp v. Associated Underwriters, Inc.*, 768 F.3d 793, 799 (8th Cir. 2014) (finding "the district court properly considered the movant's material facts admitted" when the nonmovant failed to conform their brief to the local rules.

managed room assignments as part of her duties.  Finally, David Buls ("Buls") was the caseworker who supervised Jenkins moving into Bordeaux's cell.

In March of 2016, a few weeks before Bordeaux arrived at NCCW, Douglas County Attorney Don Kleine ("Kleine"), traveled to the prison to meet with Davidson about Bordeaux's pending arrival.  Kleine had prosecuted Jenkins with Bordeaux's testimony.  He stressed the need to separate Bordeaux and Jenkins within the prison for Bordeaux's safety.  Davidson relayed this information to her staff who in turn discussed possible solutions.  Davidson initially requested that Bordeaux be sent to another facility, but the Nebraska Department of Correctional Services ("NDCS") Central Office denied the request.  NCCW staff then made plans to house Bordeaux and Jenkins separately.

On March 16, 2016, Bordeaux arrived at NCCW and began the Initial Inmate Classification Process with Golliday.  This thirty-day process is designed to identify each inmates' criminal and medical histories; social, occupational, and religious interests; and risk factors regarding other inmates.  The Initial Classification Committee ("ICC") uses that information to classify and sort prisoners to avoid conflicts.  Before Bordeaux arrived at NCCW, Davidson advised Golliday about Kleine's visit and directed her to thoroughly question Bordeaux about any safety concerns and about Jenkins in particular.

When questioned, Bordeaux told Golliday, "I have no problems with Erica Jenkins, but I can't talk for Jenkins."  Bordeaux rejected NCCW's offer to be placed in protective custody (a separate but restrictive housing unit that offers safety from other prisoners).  She read and signed a document acknowledging that the staff could not guarantee her safety, reiterated to the security division that she had no safety concerns and knew of no conflicts between her and Jenkins.  Bordeaux also signed Golliday's classification report designating her as a low risk of becoming a victim.  Finally, she submitted a handwritten note certifying that she did not fear for her safety.

At other times, Bordeaux indicated some concern for her safety.  On April 12, 2016, Bordeaux told NCCW's psychologist, Dr. Johnna Williams ("Dr. Williams"), that she was worried about Jenkins possibly retaliating against her.  A meeting with the ICC brought this statement to Golliday's attention.  After considering Dr. Williams's report, Kleine's information, and Bordeaux's apparent lack of concern in other statements, the ICC disagreed on how to value the information.

In the face of conflicting information, Davidson viewed Bordeaux and Jenkins's history as a safety issue and told her staff to separate the two for the time being.  Davidson directed Hunzeker to complete a Central Monitoring ("Central Monitoring") investigation on Bordeaux and Jenkins.

Central Monitoring is NDCS's system for recording inmate conflicts and communicating them to the staff.  Inmates on Central Monitoring may still be housed in the general population but can be separated by building, wing, cell, and occupation.  When the warden requests Central Monitoring, the unit administrator usually supervises an investigation of the applicable inmates.  The unit administrator submits a report to the warden outlining the conflict and recommending a degree of separation.  The warden then sends this report to the NDCS Central Office which makes the final decision.

Miscommunication derailed Central Monitoring protection for Bordeaux.  After Davidson requested a Central Monitoring investigation on Bordeaux and Jenkins, Hunzeker told Golliday he would take responsibility for interviewing the inmates and completing the report.  In his report, Hunzeker recommended Bordeaux and Jenkins be housed in separate cells and assigned different occupations.  According to Hunzeker, he placed his completed report in Bordeaux's file and put that file in Davidson's mailbox.  According to Davidson this report was lost, and she never received the recommendation.

According to Davidson, she continued to regularly communicate her expectation that Bordeaux and Jenkins be separated and expected her staff to follow her orders.  Her

ongoing conversations yielded some administrative protections. The head of NCCW's security division, Major Shaun Settles ("Settles"), frequently discussed the issue with Davidson. Settles placed Bordeaux and Jenkins on their major watch list so the security staff would specifically monitor their interactions to avoid conflicts.

At the end of Bordeaux's intake process, Golliday submitted an Initial Classification Report ("ICR") to Davidson for approval. The report relied on Bordeaux's statements and labeled her as a low risk of becoming a victim of prison violence. The reporting software also automatically marked "no" for Central Monitoring because the NDCS Central Office had not yet approved an investigation report for Bordeaux and Jenkins. According to Davidson, she signed off on Golliday's report, believing Hunzeker was still investigating Central Monitoring and that his pending report would correct Bordeaux's classification. Hunzeker resigned his position as a unit administrator on April 27, 2016, thinking that Davidson had seen his investigation. NCCW was without a unit administrator for a month.

Bordeaux was originally assigned to a separate cell from Jenkins. Bordeaux lived in the C Wing of the North Hall. Jenkins lived in the B Wing. Since inmates in the North Hall are confined to their wing, this was deemed to be an appropriate level of separation.

For the next six months, the separation measures worked effectively. Bordeaux and Jenkins only crossed paths on three occasions. None of their interactions caused the NCCW staff concern. The security division reported no concerns regarding Bordeaux and Jenkins. Many on the unit staff were unaware of any issues between them.

In September of 2016, NCCW remodeled the B Wing. This remodel caused many inmates, including Jenkins, to be transferred to other locations. Bicknase was tasked with making the new housing assignments. She made decisions by considering her knowledge about inmate relationships, medical accommodations, and the professional opinions of her coworkers. She especially valued the opinion of the former North Hall case manager, Damon Gruber ("Gruber"). In addition, Bicknase checked Central Monitoring for critical

5

inmate conflict information. According to Bicknase, neither she nor Gruber were aware of any history of conflict between Bordeaux and Jenkins. Bicknase was not party to any conversations suggesting that there might be problems between the two. Relying on her own knowledge, Gruber's input, and the Central Monitoring records, Bicknase created new housing assignments and gave a list of them to Buls. That list still separated Bordeaux and Jenkins.

When Buls sought to move Jenkins into her new cell, she resisted. Jenkins strongly objected to her assignment and asked to be moved into Bordeaux's cell instead. Buls wrote up Jenkins for her behavior but nevertheless submitted her request to Bicknase. Bicknase checked Central Monitoring, found no information concerning Bordeaux and Jenkins, and allowed the request. Buls asked Bordeaux if she had any concerns about sharing a cell with Jenkins. Buls does not recall Bordeaux objecting; however, Bordeaux claimed in her deposition that she and another inmate told Buls that Jenkins was her codefendant and that living together could result in Bordeaux getting hurt. Buls carried out the transfer and moved Jenkins into Bordeaux's cell on September 21, 2016.

Shortly after the move, Deb Novak ("Novak"), one of Bordeaux and Jenkins's roommates, complained to Folts-Oberle that there might be a fight in her room. Folts-Oberle did not understand that Novak was referring to Bordeaux and Jenkins because she did not know their history and was never informed of the ICC's dilemma. Folts-Oberle understood the complaint as Novak fearing for her own security and offered her protective custody. Folts-Oberle also discounted Novak's complaint because it was one of many roommate complaints received during the remodel.

Apart from Novak's complaint, there was no warning about Bordeaux's imminent peril. Davidson and Golliday were not aware Bordeaux and Jenkins were cellmates. Folts-Oberle did not know Novak's comment was in reference to Bordeaux. Bicknase claims no one told her the two needed to be separated. Bordeaux herself testified she had no idea that Jenkins would assault her before the attack.

6

On September 24, 2016, Jenkins and another inmate named Priscilla Fields ("Fields") assaulted Bordeaux in her cell.  Jenkins and Fields placed a metal padlock into a sock and beat Bordeaux with the lock and their fists for around thirty minutes.  Bordeaux suffered facial injuries, defensive wounds, and a fractured finger.  She was hospitalized for her injuries.

Following the assault, Bordeaux was housed separately in the medical unit.  She and Jenkins were finally placed on Central Monitoring on September 28, 2016.  Bordeaux was later moved to Restrictive Housing ("Restrictive Housing") due to the risk of further harm.  Restrictive Housing is NCCW's confined living quarters where inmates are strictly separated from others.  On September 29, she was voluntarily transferred to protective custody.  Bordeaux remained in protective custody until the summer of 2017 when she was moved to a prison in Minnesota.  In February 2019, Bordeaux returned to Nebraska where Folts-Oberle placed her in the Community Corrections Center, a work-release prison in Lincoln, Nebraska, where she is currently serving the remainder of her sentence.

## B.    Procedural History

On August 31, 2018, Bordeaux brought suit against Bicknase, Golliday, Buls,[2] Folts-Oberle, Davidson and ten unidentified Doe defendants ("Does") all in their individual and official capacities for allegedly violating Bordeaux's constitutional rights.  She also claimed that NCCW's customs or policies failed to protect inmates from harm and that Davidson improperly trained her staff.

On September 1, 2020, Bordeaux voluntarily dismissed (Filing No. 54) Buls.  In December 2020, she identified one of the Does as Steve Hunzeker and amended her complaint (Filing No. 65).  Hunzeker responded with a Motion to Dismiss for Failure to State a Claim (Filing No. 106).  He argued that the statute of limitation on Bordeaux's claim expired on September 24, 2020.  Hunzeker noted he was not named as a defendant

---

[2]Bordeaux originally defined Buls as "Officer Bowels" but later corrected the name to David Buls.

by then and argued Doe defendants do not relate back under Federal Rule of Civil Procedure 15(c).  *See Loeffler v. City of Anoka*, 893 F.3d 1082, 1085 (8th Cir. 2018).  On April 22, 2021, the Court dismissed Hunzeker (Filing No. 126), deciding that a Doe party without more, cannot be used as a statute of limitation placeholder.  On March 5, 2021, this Court dismissed (Filing No. 115) the official-capacity claims against all defendants without prejudice because state "officials acting in their official capacities are [not] 'persons' under § 1983."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Remaining are Bordeaux's claims against Davidson, Golliday, Folts-Oberle, Bicknase, and nine Doe defendants in their individual capacities for allegedly violating Bordeaux's Eighth Amendment right to be protected from harm by other inmates.  She claims these defendants exhibited deliberate indifference towards her safety and violated § 1983 by engaging in unconstitutional policies or customs.  Finally, Bordeaux claims that Davidson failed to properly train her staff.[3]  The pending motions are ripe for decision.

## II.   DISCUSSION

### A.    Standard of Review

In ruling on a motion for summary judgment, the Court views the record "in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor."  *Whitney v. Guys Inc.,* 826 F.3d 1074, 1076 (8th Cir. 2016).  However, it does "not credit mere allegations, unsupported by specific facts or evidence."  *McKey v. U.S. Bank Nat'l Ass'n*, 978 F.3d 594, 598 (8th Cir. 2020) (quoting *Williams v. United Parcel Serv.* Inc., 963 F.3d 803, 807 (8th Cir. 2020)).

The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a

---

[3]Bordeaux's Amended Complaint (Filing No 65) referenced an equal protection violation in her post-assault treatment.  In her brief, Bordeaux clarified that this is not a separate claim, but part of her damages under the Eighth Amendment claim.  Because her claim fails, these claimed damages are not addressed.

matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "when the evidence is such that a [reasonable] jury could return a verdict for the non-moving party." *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016). A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In opposing summary judgment, Bordeaux "has an affirmative burden to designate specific facts creating a triable controversy." *McConnell v. Anixter, Inc.*, 944 F.3d 985, 988 (8th Cir. 2019) (quoting *Crossley v. Ga.-Pac. Corp.*, 355 F.3d 1112, 1113 (8th Cir. 2004)). She cannot rely on "some metaphysical doubt as to the material facts." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Nor can she simply assert "the mere existence of some alleged factual dispute between the parties." *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248). When the record taken as a whole would not support a reasonable jury finding in Bordeaux's favor, "there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Matsushita*, 475 U.S. at 588).

## B.   Bordeaux's Failure to Comply with Applicable Rules and a Court Order

Despite multiple chances to clarify disputed material facts, Bordeaux failed to do so. *See McConnell*, 944 F.3d at 988. On February 11, 2022, Bordeaux submitted a Brief Opposing Defendants' Motions for Summary Judgment (Filing No. 153). The brief failed to follow Rule 56.1(b)(1) which requires:

> The party opposing a summary judgment motion must include in its brief a concise response to the moving party's statement of material facts. Each material fact in the response must be set forth in a separate numbered paragraph, must include pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies, and, if applicable, must state the number of the paragraph in the movant's statement of material facts that is disputed. <u>Properly referenced material facts in the movant's statements are</u>

> considered admitted unless controverted in the opposing
> [party's] response.

The Court's rules are unambiguous and there are clearly stated consequences for ignoring them. When a nonmovant does not specifically controvert a movant's facts, the Court may consider "the movants' material facts admitted." *Tramp*, 768 F.3d at 799; *see also* Fed. R. Civ. P. 56(e) (explaining that a party's failure to "properly address another party's assertion of fact" permits the Court to "consider the facts undisputed for the purposes of the motion" and grant summary judgment if the movant is entitled to it).

Bordeaux's initial brief was rejected on February 16, 2022, in order to afford her a second chance to respond properly. The Court quoted Rule 56.1(b)(1) and warned that failing to follow the rule would result in the Court considering the defendants' facts as admitted (Filing No. 156).

On March 17, 2022, Bordeaux filed an Amended Brief in Opposition to Defendants' Motion for Summary Judgment (Filing No. 158). Which again failed to follow Rule 56.1(b)(1). The brief does not concisely respond to each material fact in separate numbered paragraphs or reference the numbers of the paragraphs in the defendants' statements of undisputed material facts. Rather, Bordeaux once again offered a narrative presentation of arguments occasionally interrupted by unsupported facts.

While it is possible that a factual dispute lies somewhere in the record, "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). "[This court] will not mine a summary judgment record searching for nuggets of factual disputes to gild a party's arguments." *Rodgers v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir. 2006). The affirmative burden is on Bordeaux, not the Court, to find and present specific evidence supporting her opposition to summary judgment. *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 445, 458 (5th Cir. 1998). Because Bordeaux twice failed to comply with the local rules, the defendants' properly referenced material facts are now deemed admitted for the purposes of the summary judgment motions.

Bordeaux presents evidence that Corporal Michelle Kringle ("Kringle") of the security division told Bicknase (around the time of the move) that Bordeaux and Jenkins should be separated. The report also states that multiple inmates told Bicknase to separate the two. This unsworn evidence, however, does not come directly from Kringle. It is a written account of investigator Christina Oliver's ("Oliver") memory of her conversation with Kringle. Oliver's investigation was conducted for a different case and Kringle does not certify the truth of the account.

Bicknase argues this Kringle evidence suffers from a range of problems. Bicknase first notes that (1) Bordeaux's proposed facts are not found in an affidavit or declaration "made on personal knowledge" and (2) the facts are not "admissible in evidence" nor "show that the affiant or declarant is competent to testify" as required by Federal Rule of Civil Procedure 56(c)(4). Instead, these facts come from a third party's memory of a discussion about a different case. The statement is not "written, signed, dated, and certified as true and correct 'under the penalty of perjury'" by Kringle as required by the Eighth Circuit. *See Banks v. Deere*, 829 F.3d 661, 667 (8th Cir. 2016) (quoting 28 U.S.C. § 1746 and finding that unsworn and unattested statements do not meet the standards for admissible evidence for summary judgment). Finally, Bicknase asserts that the evidence contains multiple levels of hearsay and should be considered inadmissible. *See* Fed. R. Evid. 801-05; s*ee Cherry v. Ritenour Sch. Dist.*, 361 R.3d 474, 480 (8th Cir. 2004). Bicknase's arguments are not without some merit.

The Court need not resolve those issues because Bordeaux's statement of facts suffers from the same fatal flaws as the rest of Bordeaux's brief. Bordeaux does not set forth her proposed evidence in separate numbered paragraphs with proper references to the Bicknase brief. *See* NECivR 56.1. They are again presented in a narrative form, interspersed with arguments, and lacked appropriate references. The Court therefore has not considered Bordeaux's Kringle evidence in deciding these motions.

### C.  Bordeaux's Treatment of the Doe Defendants

Bordeaux's amended pleading still names nine Doe defendants.  An action against a Doe defendant requires the plaintiff to make "allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery." *Est. of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).  Bordeaux has yet to specifically identify, or attempt to identify, any of the nine Doe defendants despite the fact this lawsuit was filed in 2018.  Indeed, Bordeaux does not even mention the Does in her brief or describe any efforts to identify them.  The nine Doe defendants are dismissed without prejudice.

### D.  Qualified Immunity and Bordeaux's Eighth Amendment Claim

The defendants argue they are immune from Bordeaux's lawsuit under the legal doctrine of qualified immunity.  Qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity protects prison officials from liability unless they are "plainly incompetent" or "knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  Under this doctrine, prison officials generally cannot be held liable for failing to prevent a surprise attack. *See Prosser v. Ross*, 70 F3d. 1005, 1007 (8th Cir. 1995).  To overcome qualified-immunity, Bordeaux must show each defendant violated her constitutional right and such right was clearly established when it was violated. *See Vandevender v. Sass*, 970 F.3d 972, 975 (8th Cir. 2020); *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

Bordeaux argues her claim overcomes the defendants' assertions of qualified immunity.  She maintains the defendants each violated her constitutional right by failing to protect her from Jenkins. *See Blair v. Bowersox*, 929 F.3d 981, 987 (8th Cir. 2019).  The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511

U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).   Specifically, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners."   *Id.* at 833 (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 42 F.2d 556, 558 (1977)).

But "prisons are inherently dangerous environments, 'it is not . . . every injury suffered by one prisoner at the hands of another that translates into constitutional liability." *Vandevender*, 970 F.3d at 976 (quoting *Farmer*, 511 U.S. at 834).   For a prison official to violate an inmate's Eighth Amendment right, the official must be "deliberately indifferent to the need to protect them from a substantial risk of serious harm from other inmates." *Newman v. Holmes*, 122 F.3d 650, 652 (8th Cir. 1997).   Bordeaux must establish that each of the defendants were deliberately indifferent towards her safety.

To demonstrate deliberate indifference, Bordeaux must satisfy two elements.   First, she "must show there was a substantial risk of serious harm to the victim, an objective component."   *Letterman v. Does*, 789 F.3d 856, 861 (8th Cir. 2015).   Second, she "must show that the defendants were deliberately indifferent to that risk of harm, a subjective component."   *Id.* at 862.

This subjective component has two prongs.   For the first prong, Bordeaux must "demonstrate that defendants knew of the substantial risk of serious harm to the victim." *Id.*   Although Bordeaux need not show that the defendants had actual knowledge of the risk, she must at least show they "had been exposed to information concerning the risk and 'thus must have known' about it."   *Id.* (quoting *Farmer*, 511 U.S. at 842).   Each defendant's knowledge is considered without "hindsight's perfect vision."   *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998).   Bordeaux must demonstrate each defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm [existed]" and that each defendant drew that inference.   *Farmer*, 511 U.S. at 837.   If the defendants failed to "alleviate a significant risk that [they] should have perceived but did not," they cannot be held liable.   *Id.*

13

This knowledge prong can be difficult to meet. The Eighth Circuit has held that even direct threats between inmates "are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996). Comments about a possible inmate assault may not confer knowledge when they are interpreted by prison officials as complaints about other matters. *See Pagels v. Morrison*, 335 F.3d 736, 741 (8th Cir. 2003). "Vague and unsubstantiated" claims of concern made by inmates to guards also fall short of the standard. *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996). Awareness of an inmate's violent past likewise does not alone put prison officials on notice that the inmate will harm other inmates in the future. *See Curry v. Christ*, 226 F.3d 974, 978 (8th Cir. 2000). There must be "longstanding, pervasive, well-documented, or expressly noted information concerning the risk" to show the defendants had adequate knowledge. *Farmer*, 511 U.S. at 842. A plaintiff must point to "some further reason—beyond the plaintiff having informed the defendant officers of the threat—that a prison official could have concluded that a particular threat evidences a substantial threat." *Marbury v. Warden*, 936 F.3d 1227, 1236 (11th Cir. 2019).

In addition to showing that the defendants knew of the risk, Bordeaux must satisfy the second prong by offering evidence that the defendants deliberately disregarded the risk. *See Blair*, 929 F.3d at 987-88. She must show the prison officials "'knew that their conduct was inappropriate in light of' the risk." *Letterman*, 789 F.3d at 862 (quoting *Krout v. Goemmer*, 583 F.3d 557, 567 (8th Cir. 2009)). Significantly, the standard goes beyond negligence and "requires a highly culpable state of mind approaching actual intent," which is akin to criminal recklessness. *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017); *see also Letterman*, 789 F.3d. at 862 (stating that deliberate indifference requires showing more than negligence).

In certain circumstances, the Eighth Circuit has found that prison officials may be protected from deliberate indifference claims when the inmate explicitly assures them that there is no risk of harm. *Blades v. Schuetzle*, 302 F.3d 801, 804-05 (8th Cir. 2002). In

*Blades,* the circuit court held that an inmate was barred from claiming that prison officials deliberately disregarded his risk because he "repeatedly assured prison officials that there was no problem between him and [another inmate, and] even denied that he needed any protection." *See Walls v. Tadman*, 762 F.3d 783 (8th Cir. 2014) (deciding that prison officials were not deliberately indifferent for believing an inmate's repeated assurances that his living situation poised no risk of harm); *Jackson*, 140 F.3d 1149 (concluding prison officials were not deliberately indifferent to third-party warnings where the victim directly told them no risk existed).

Additionally, the Eighth Circuit has decided defendants were not acting with deliberate indifference when they took "affirmative, deliberative steps" to protect an inmate, even if those steps "constitute poor judgment, negligence, or possibly even gross negligence." *Luckert v. Dodge County*, 684 F.3d 808, 819 (8th Cir. 2012); s*ee also Jackson*, 140 F.3d 1149 (finding that an official did not deliberately disregard a risk where he interviewed the victim to see if he was concerned about the risk); *Blades*, 302 F.3d at 801 (concluding that prison officials did not deliberately disregard a risk because they made efforts to transfer the victim before the attack, even though their efforts failed due to their own "lack of coordination"). Thus, even when it is "easy to think of additional steps" that prison officials could take, courts seldom find deliberate indifference when officials take some concentrated action to alleviate the risk. *Pagels*, 335 F.3d at 742 (concluding that an official was not deliberately indifferent where he searched cells in an unsuccessful effort to alleviate an inmate's risk).

### 1.    Bicknase

Bordeaux has not established that Bicknase was aware of the objective risk to Bordeaux. Bordeaux alleges Bicknase knew about Bordeaux's case history and Jenkins's previous violent outbursts. However, awareness of past violence alone is not enough to show that a defendant perceived a risk. *See Curry*, 226 F.3d at 978. Bordeaux has not shown any staff members informed Bicknase of the risk that living with Jenkins created for her. Bicknase checked Central Monitoring and talked with other staff members, but

she found no "longstanding, pervasive, well-documented, or expressly noted information concerning the risk." *See Farmer*, 511 U.S. at 842. Bordeaux fails to offer evidence that Bicknase was aware that Bordeaux was in danger. *Id.* at 837. Bicknase is entitled to qualified immunity.

### 2.   Folts-Oberle

Similarly, Bordeaux does not provide sufficient evidence that Folts-Oberle knew of any substantial risk of serious harm. *See Letterman*, 789 F.3d. at 862. As with Bicknase, Bordeaux has not properly presented any evidence that any staff members or prison records informed Folts-Oberle of any risk between Bordeaux and Jenkins. *See Farmer*, 511 U.S. at 842. Bordeaux instead points to Novak's conversation with Folts-Oberle as proof that she knew the risk. But Folts-Oberle reasonably viewed this conversation as a concern regarding Novak's own safety, not Bordeaux's. *See Pagels*, 335 F.3d at 741 (finding that an official did not have knowledge of a risk when he interpreted information about a fight as a common request for a room move); *see also Farmer*, 511 U.S. at 837 (holding that plaintiffs must show defendants inferred the risk). Folts-Oberle was not aware that Bordeaux was Novak's cellmate, much less that she was in danger. Folts-Oberle is entitled to qualified-immunity.

### 3.   Golliday

Likewise, Bordeaux does not present sufficient evidence to show that Golliday knew about an objective risk to Bordeaux's safety. *See Letterman*, 789 F.3d. at 862. Bordeaux argues that because Golliday was aware of Kleine's pre-incarceration warning, the risk of harm was obvious. She further asserts Golliday heard about Dr. Williams's report and participated in numerous discussions regarding the need to keep her separated from Jenkins.

On the other hand, the record is clear Bordeaux told Golliday numerous times that she was not concerned about her safety. Golliday was also told by a supervisor that a Central Monitoring investigation was underway. She was not aware that Bordeaux and

Jenkins were cellmates until after the attack.  Although Bordeaux alleges Golliday had heard discussions regarding Jenkins's risk to Bordeaux, she fails to show Golliday knew they were not safely apart.  *See Farmer*, 511 U.S. at 842.  Finally, based on the information Golliday had, she created an ICR (which Bordeaux signed) that designated Bordeaux as a low assault risk.  *See id.*  at 837 (noting "[a]n officials' failure to alleviate a significant risk that [s]he should have perceived but did not . . . cannot under our cases be condemned as the infliction of punishment").  Bordeaux does not present sufficient evidence that Golliday perceived her danger; she does not demonstrate that Bordeaux "must have known" the risk. *Id.* at 842.

Furthermore, Bordeaux does not show Golliday's mindset was akin to criminal recklessness.  *See Letterman*, 789 F.3d. at 862.  Bordeaux argues that Golliday ignored her risk when she disregarded Kleine's warning and the ICC's discussion about Dr. William's letter.  But Bordeaux fails to respond to Golliday's argument that officials are entitled to qualified immunity when inmates deny the existence of a risk.  *See Blades*, 302 F.3d at 804; *Walls*, 762 F.3d at 783; *Jackson*, 140 F.3d 1149.

Bordeaux directly told Golliday she had no problems with Jenkins, declined Golliday's offer for protective custody, and signed Golliday's report affirming that her risk was insignificant.  "An inmate's own statements that a prisoner posed no risk to h[er] would bar h[er] failure-to-protect claim." *Cf. Walls*, 762 F.3d at 783 (citing *Blades*, 302 F.3d at 804).  Bordeaux "repeatedly denied the existence of any potential problems" between her and Jenkins.  *Id*.  She "now asks this court to find an Eighth Amendment violation in [Golliday's] decision to believe h[er]." *Id.*  Prison officials are not deliberately indifferent when they accept an inmate's repeated assurances about their safety.  *Id.*  Golliday simply listened to Bordeaux.

Finally, even if the Court were to find that Golliday committed a constitutional violation, Bordeaux does not show the right was clearly established.  Qualified immunity protects an official when their conduct "does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 12. The law must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right. *Id.* at 11.

"'Clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 580 U.S. 73, 137 (2017) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 742, (2011). To overcome qualified immunity, "the clearly established law must be 'particularized' to the facts of the case." *White*, 580 U.S.at 137 (quoting *Creighton*, 483 U.S. at 640); *see also Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (stating the facts "must be undertaken in light of the specific context of the case, not as a broad general proposition").

Bordeaux's arguments are broad generalities. Bordeaux states that Golliday violated the general right to be protected from inmate violence by acting deliberately indifferent towards the need to protect Bordeaux from harm. She offers no other pertinent legal analysis to show that Golliday's specific actions breached a clearly established right. Bordeaux "failed to identify a case where an officer acting under similar circumstances as [Golliday] was held to have violated the [Eighth] Amendment." *White*, at 137. Qualified immunity protects all officials but the "plainly incompetent" or those who "knowingly violate the law." *Malley*, 475 U.S. at 341. Bordeaux fails to demonstrate that Golliday falls outside its protection.

### 4.    Davidson

Bordeaux also does not show that Davidson knew of any serious risk of harm that Bordeaux faced. Bordeaux argues that because Davidson received Kleine's warning and had multiple conversations with NDCS staff about the need to separate Bordeaux and Jenkins, she must have known about the risk to Bordeaux's safety. However, Bordeaux does not present evidence that Davidson knew that the two were made cellmates. The

18

undisputed facts before the Courts establish Davidson thought Bordeaux and Jenkins were being housed separately and that Bordeaux was safe.  There is a lack of evidence that Davidson must have inferred the substantial risk.  *See Farmer*, 511 U.S. at 837.

Bordeaux also does not establish that Davidson deliberately disregarded a known risk.  She argues Davidson recklessly disregarded Bordeaux's safety when she approved Golliday's ICR without waiting for Hunzeker's Central Monitoring investigation.  She further argues Davidson was more than negligent when she failed to follow up with Hunzeker and her staff more thoroughly on the need to keep Bordeaux and Jenkins separated.  Finally, she argues Davidson deliberately disregarded a known risk by failing to give clear directives and keep clear records ordering Bordeaux and Jenkins remain separated.

But Davidson did take many affirmative steps which undermine Bordeaux's claimed constitutional violations.  *See Luckert*, 684 F.3d at 819 (explaining that prison officials are protected by qualified immunity when they take "affirmative, deliberate steps").  In response to Kleine's warning and the ICC discussions, Davidson requested that her staff complete a Central Monitoring investigation for Bordeaux and Jenkins, and she states that she trusted her staff to follow through.  *See Bailey v. Wood*, 909 F.2d 1197 (8th Cir. 1990) (concluding that entrusting staff members to address an assault risk is a reasonable way for a warden to respond to a threat).  She also had numerous conversations with her staff on the need to separate the two.  *See id.*  (deciding that attempts to house inmates separately are affirmative steps that weigh against deliberate indifference).  Moreover, Davidson consulted with the security division to monitor Bordeaux and Jenkins's behaviors.  *See Jackson*, 140 F.3d 1152 (finding no deliberate indifference when the defendant made unsuccessful efforts to protect the inmate).  It is "easy to think of additional steps" that Davidson could have taken to further protect Bordeaux.  *Pagels*, 335 F.3d at 742.  However, when prison officials take action to try to protect inmates, a plaintiff must show more than a "lack of coordination" and poor communication to show the official

19

deliberately disregarded a risk. *Blades*, 302 F.3d at 801. Bordeaux has not shown Davidson acted with deliberate indifference.

### 5.   Bordeaux's *Young v. Selk* Comparison

Bordeaux's brief relies heavily on *Young v. Selk*, 508 F.3d 868, 873 (8th Cir, 2007), to suggest that the defendants each deliberately disregarded a known risk (Filing No. 158). However, *Young* is factually distinguishable from Bordeaux's case. The *Young* court held an attacker was an objective risk because he had expressly threatened to harm the plaintiff. *Id.* Here, Jenkins never threatened Bordeaux. Additionally, the *Young* court found the plaintiff directly told the defendants about the risk. *Id.* Here, Bordeaux did not tell any defendant she faced a risk. Finally, the *Young* court found that the defendants failed to take any meaningful action in response to the risk. *Id.* at 871. Here, defendants took affirmative steps to separate Bordeaux from Jenkins. Bordeaux has not addressed these differences and fails to show that her case is analogous to *Young v Selk*.

### E.   Bordeaux's § 1983 Claims

Bordeaux brings several other § 1983 claims against the defendants. She claims the defendants' followed policies or customs that failed to keep inmates safe. She also suggests Davidson failed to properly train the other defendants on how to evaluate violent inmates and separate codefendants. Finally, she argues the defendants' official conduct caused her to be assaulted by Jenkins.

To succeed, Bordeaux "must allege that conduct of a defendant acting under color of state law deprived [her] of a right, privilege, or immunity secured by the constitution or the laws of the United States." *Hott v. Hennepin County*, 260 F.3d 901, 905 (8th Cir. 2001); *Martinez v. California*, 444 U.S. 277, 284 (1980) (stating "[t]he first inquiry in any § 1983 suit is . . . whether the plaintiff has been deprived of a right secured by the Constitution"). Because Bordeaux has not identified any constitutional violation, the § 1983 claims fail.

## III.    CONCLUSION

Bordeaux failed to comply with a court order and the applicable procedural rules and did not specifically designate disputed facts.  *See McConnell*, 944 F.3d at 988.  That failure has crippled her response to the defendants' motions for summary judgment. Bordeaux's Eighth Amendment claim cannot survive because she did not demonstrate that the defendants each violated her constitutional rights.  *See Vandevender*, 970 F.3d at 975. Bordeaux does not show that any of the defendants had subjective knowledge of the serious risk Bordeaux faced.  Moreover, she does not offer sufficient evidence to explain how Golliday and Davidson's actions meet the standard for deliberately disregarding her risk. Without evidence of a violation, the defendants are each protected from liability through qualified immunity.  *See Harlow*, 457 U.S. at 818; *Hott*, 260 F.3d at 905.  Accordingly,

IT IS ORDERED:

1.    Denise Davidson, Jeanie Golliday, and Angela Folts-Oberle's Joint Motion for Summary Judgment (Filing No. 138) is granted.

2.    Cheryl Bicknase's Motion for Summary Judgment (Filing No. 142) is granted.

3.    The remaining nine Doe defendants are dismissed without prejudice.

4.    A separate judgment will issue dismissing the case with prejudice.

Dated this 8th day of August 2022.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge